**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Timothy M. O'Mara


    v.                                          08-cv-51-SM


Superintendent, Hillsborough County
Department of Corrections, et al.

**REPORT AND RECOMMENDATION**

Pro se plaintiff Timothy M. O'Mara brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging various constitutional deprivations in violation of his rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution (document nos. 1 and 8).  Named as defendants are William Wrenn, Commissioner of the New Hampshire Department of Corrections ("NHDOC"), Toni Pappas, Commissioner of Hillsborough County, the Hillsborough County Department of Corrections ("HCDOC"), and the following HCDOC employees: James M. O'Mara, Jr., Superintendent; Linda Norman, bookkeeper; C. Beaudon, mail agent; and corrections officers D. Dionne, Robbins, Pinciaro, Riley, Brown, Granville, W. Raymond, W. Scurry, William McDougall, Tony Sawer and Menic.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).  For the reasons stated below, I conclude that O'Mara has alleged the following claims:

  (1)   Fourteenth Amendment claims arising from inhumane cell conditions against O'Mara, Dionne, Brown and Menic;

  (2)   Sixth and Fourteenth Amendment claims arising from interference with the right to attorney-client communications and the right to access the courts against Norman, Beaudon, Pinciaro and Robbins; and

  (3)   Fourteenth Amendment due process claims arising from O'Mara's confinement in administrative segregation against Raymond, McDougall, Scurry and Sawer; and

  (4)   related municipal liability claims against the HCDOC.

I recommend dismissal of all remaining claims.

Also filed is a motion to appoint counsel (document no. 3), motion for transfer (document no. 7) and motion to be released from administrative segregation (document no. 4) which, for the reasons stated below, I recommend be denied.  I further recommend that a preliminary injunction hearing be scheduled with regard to O'Mara's claims arising from his administrative segregation.

2

<u>Standard of Review</u>

In reviewing a pro se complaint, this court must construe the pleading liberally and in favor of the pro se litigant.  <u>See</u> <u>Ayala Serrano v. Gonzalez</u>, 909 F.2d 8, 15 (1st Cir. 1990) (following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).  At this preliminary stage of review, all factual assertions made by the plaintiff and inferences reasonably drawn therefrom must be accepted as true.  <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996)(stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true).  This review ensures that pro se pleadings are given fair and meaningful consideration.  <u>See</u> <u>Eveland v. Director of CIA</u>, 843 F.2d 46, 49 (1st Cir. 1988).  I apply this standard in reviewing O'Mara's complaint.

<u>Background</u>

O'Mara, a pretrial detainee confined at the HCDOC, alleges that during the course of his confinement prison officials subjected him to various constitutional deprivations.  Defendants allegedly denied him adequate and equal out-of-cell time, recreational time and exercise equipment.  Defendants also allegedly subjected O'Mara to inhumane conditions of confinement,

3

including inadequate and nutritionally deficient meals, serving
him meals on contaminated trays, and confining him to a cell
where he was exposed to inadequate ventilation and "poisonous
gases."  In addition, defendants allegedly classified O'Mara
under protective custody status but housed him with inmates who
were assigned higher security classifications, thereby placing
him at risk of harm.

O'Mara further alleges that defendants transferred him to a
different unit without transferring his legal documents and
subsequently denied him access to those documents, thereby
interfering with his meaningful access to the courts.  In
addition, defendants allegedly deprived him of property without
due process of law, subjected him to unreasonable cell searches
and interfered with his mail.  Lastly, O'Mara alleges that
defendants confined him to administrative segregation and imposed
restrictive conditions upon him without due process of law.  He
now brings this action pursuant to Section 1983, alleging that
defendants' acts and omissions rise to the level of
constitutional deprivations.

<u>Discussion</u>

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who,

4

acting under color of state law, violate federal law.  See 42
U.S.C. § 1983; Parratt v. Taylor, 451 U.S. 527, 535 (1981);
Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In
order to be held liable for a violation under Section 1983, a
defendant's conduct must have been a cause in fact of the alleged
constitutional deprivation.  See Monell v. Dep't of Soc. Servs.,
436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62
(1st Cir. 1997).  The premise of O'Mara's Section 1983 claim is
that the defendants, acting under color of state law, have
violated his rights under the First, Fourth, Fifth, Sixth, Eighth
and Fourteenth Amendments to the United States Constitution.

A.   Conditions of Confinement

O'Mara's complaint raises several challenges to the
constitutionality of his conditions of confinement.  Because he
was a pretrial detainee at all times relevant to this action, his
claims challenging the conditions of his confinement are analyzed
under the Due Process Clause of the Fourteenth Amendment rather
than the Eighth Amendment.  See Burrell v. Hampshire County, 307
F.3d 1, 7 (1st Cir. 2002) (holding that pretrial detainees are
protected under the Fourteenth Amendment Due Process Clause,
rather than the Eighth Amendment, but are afforded the same
Eighth Amendment standards).  "A pretrial detainee's claim that

he has been subjected to unconstitutional conditions of confinement implicates Fourteenth Amendment liberty interests." Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005). "The parameters of such an interest are coextensive with those of the Eighth Amendment's prohibition against cruel and unusual punishment." Id. (citing Burrell, 307 F.3d at 7).

In order to establish a constitutional violation under the Eighth Amendment standards, a prisoner must meet both objective and subjective criteria. Id. (citing Farmer v. Brennan, 511 U.S. 825, 832-34 (1994)). First, he must establish that, from an objective standpoint, "the conditions of his confinement deny him the minimal measure of necessities required for civilized living." Id. Second, he must show that, from a subjective standpoint, the defendant was deliberately indifferent to his health or safety. Id.

    1.   Out-of-Cell and Recreation Time

Here, O'Mara alleges that while he was housed in the protective custody unit, defendants denied him adequate out-of-cell and recreation time. On June 20, 2007, he was classified to protective custody because of physical threats made against him by other inmates. From that day to the present, he allegedly was afforded only two hours a day of out-of-cell time, which

6

purportedly was allocated into less-than-one-hour intervals.  He
adds that from June 20, 2007 to November 11, 2007, he lost nine
to eleven hours of out-of-cell time each week.  He further
alleges that when he was confined on Unit 1C for a period of
thirty days, he was denied any opportunity to exercise.  Lastly,
O'Mara complains that his out-of-cell time is scheduled
simultaneously with other activities, including religious
services, educational programs, mail call, medical pass, laundry,
hair cuts, visitation and law library use.  He allegedly reported
the deprivations to Superintendent O'Mara and Dionne, however,
they failed to remedy the problem or take adequate corrective
action.

Lack of exercise and recreation "may rise to a
constitutional violation in certain limited circumstances 'where
movement is denied and muscles are allowed to atrophy [and] the
health of the individual is threatened.'" Thomas v. Ramos, 130
F.3d 754, 763 (1997)(quoting French v. Owens, 777 F.2d. 1250,
1255 (7th Cir. 1985)); Hosna v. Groose, 80 F.3d 298, 306 (8th
Cir. 1996); Redden v. Ricci, No. 07-3712 (JAP), 2008 WL 111266 at
*4 (D.N.J. Jan. 10, 2008).  "Thus, a constitutional violation
will occur when the deprivation of exercise extends for a
prolonged period of time and tangible physical harm resulting

from the lack of exercise is demonstrated." <u>Redden</u>, 2008 WL 111266 at *6.

Here, O'Mara's allegations are insufficient to state a cognizable constitutional claim.  His complaint that he was afforded only two hours of out-of-cell time a day does not state a claim of constitutional dimension.  <u>See</u> <u>Wishon v. Gammon</u>, 978 F.2d 446, 449 (8th Cir. 1992)(forty-five minute out-of-cell recreation time per week did not violate the Eighth Amendment rights of inmate in protective custody); <u>Gann v. Schriro</u>, No. 08-8017-PCT-DGC (LOA), 2008 WL 898081 at *2 (D. Ariz. Mar. 31, 2008)(three two-hour recreation periods per week insufficient to state an Eighth Amendment violation).  Nor does his complaint of being completely denied exercise for thirty days state a claim of constitutional dimension.  <u>See</u> <u>Phillips v. Norris</u>, 320 F.3d 844, 847 (8th Cir. 2003)(thirty-seven days without being allowed to exercise did not constitute an atypical and significant hardship in the context of normal prison life); <u>Pearson v. Ramos</u>, 237 F.3d 881, 994-85 (7th Cir. 2001)(denial of yard privileges for ninety days did not constitute cruel and unusual punishment).

Furthermore, O'Mara has not identified any injury resulting from the alleged deprivations.  He has not alleged that the denial of adequate out-of-cell and recreation time has threatened

or adversely affected his mental well being or that it has caused him to suffer psychological or physical problems.  His complaints, without any allegations of resulting psychological or physical stress, do not constitute deprivations sufficiently extreme to establish a cognizable constitutional claim.

Moreover, it appears that valid institutional reasons existed to warrant the restrictions imposed.  O'Mara concedes that he was placed in protective custody because of physical threats made against him by other inmates.  The record also indicates that defendants offered to transfer him to the general prison population where he would be afforded more out-of-cell and recreation time.  For purposes of preliminary review, therefore, I find that O'Mara has failed to allege a cognizable constitutional claim premised on the denial of adequate out-of-cell and/or recreation time.  Accordingly, I recommend dismissal of this claim in its entirety.

2.   Cell Conditions

O'Mara alleges that defendants subjected him to inhumane cell conditions, including lack of ventilation and exposure to poisonous gases, inadequate and nutritionally deficient meals, contaminated serving trays and monotonous meals and menu selections.  He further alleges that defendants classified him as

9

a protective custody inmate but housed him with inmates who were assigned higher security classifications, thereby placing him at risk of harm.

The Eighth Amendment imposes duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer, 511 U.S. at 832–34 (quoting Hudson v. McMillian, 503 U.S. 1 (1992)). As mentioned above, a plaintiff must first establish that from an objective standpoint, "the conditions of his confinement deny him the minimal measure of necessities required for civilized living." Id. Second, he must show that from a subjective standpoint, the defendant was deliberately indifferent to his health or safety.   Id.

"[C]onditions of confinement, 'alone or in combination,' may deprive prisoners of the minimal civilized measure of life's necessities." Wilson v. Seiter, 501 U.S. 294, 304 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  See also Murray v. Edwards County Sheriff's Dept., No. 06-3376, 2007 WL 2827723, slip op. at *5 (10th Cir. 2007) (holding that "numerous inhumane conditions of confinement may be actionable if in

combination they 'produce[ ] the deprivation of a single, identifiable human need.'")(quoting Mitchell v. Maynard, 80 F.3d 1433, 1442 (10th Cir. 1996)).  Thus, a constitutional violation may be found where "overcrowded conditions are accompanied by other substandard factors, such as 'poor repair and functioning of basic physical [prison] facilities such as plumbing, ventilation and showers, . . . food, medical care, sanitation, control of vermin, lighting, heating, ventilation, noise level, bedding, furniture, education and rehabilitation programs, safety and security staffing."  Moore v. Cumberland County Board of Freeholders, Civil Action 06-4516 (RMB), 2006 WL 3359625, slip op. at *3 (D.N.J. Nov. 16, 2006) (quoting Tillery v. Owens, 907 F.2d 418, 427 (3d Cir. 1990) (considering the totality of circumstances relevant to finding whether conditions of confinement fell below minimal standards of decency)).

Here, O'Mara alleges that defendants subjected him to various unconstitutional conditions of confinement at the HCDOC. First, he alleges that defendants confined him to a cell with inadequate ventilation where he was exposed to "poisonous gases" and noxious fumes.  The gases allegedly came out of the vent in his cell on Unit 2B during January 2007.  O'Mara allegedly was exposed to the gases and fumes for at least two days, all of

11

which caused him to experience nausea, migraine headaches and dizziness.  Although O'Mara reported the problem to Brown and Menic, defendants allegedly failed to remedy the problem or transfer him to another cell.

O'Mara further alleges that on a daily basis, defendants served him "sack lunches" that were nutritionally deficient and inadequate in servings, all of which caused him to suffer a weight loss of more than twenty pounds in one month.[1]  Defendants allegedly served him sack lunches on a daily basis from June 2007 to the present.  They also allegedly served him meals on food trays that were rusted, cracked and filled with contaminated water, mold and mildew.  After eating food served on these trays, O'Mara allegedly experienced digestive problems, stomach pain, diarrhea and headaches.  Lastly, he alleges that while he was classified as a protective custody inmate and for a duration of at least 288 days, defendants housed him with inmates who were assigned higher security classifications, thereby placing him at risk of harm.  According to O'Mara, other inmates have subjected him to verbal abuse and threats of physical harm.  He allegedly

---

[1]O'Mara defines "sack lunches" to include: two bologna and cheese sandwiches; one half-ounce bag of potato chips; one apple; carrot sticks; and two cups of juice.

reported the problems to Wrenn, Superintendent O'Mara, Dionne, Brown and Pappas, however, they failed to remedy the problems or take any corrective action.

If true, the totality of the conditions described in the complaint may demonstrate that defendants' acts and omissions subjected O'Mara to inhumane conditions of confinement. Accordingly, for purposes of preliminary review, I find that O'Mara has stated cognizable Fourteenth Amendment claims against O'Mara, Dionne, Brown and Menic.  Because he has failed to identify any personal involvement or sufficient predicate facts regarding Wrenn and Pappas, I recommend that the claims against them be dismissed.

With regard to O'Mara's remaining claims concerning his cell conditions, I conclude that he has failed to identify a deprivation, or combination of deprivations, that are "sufficiently serious."  Wilson, 501 U.S. at 298-99; Hudson, 503 U.S. 9 ("extreme deprivations are required to make out a conditions-of-confinement claim").  O'Mara alleges that the menu selection and meals served at the HCDOC are monotonous.  He further alleges that defendants served him at least 240 meals while he was confined in his cell and complains that his food trays were passed under his cell door.  Even construing O'Mara's

13

allegations liberally, it does not appear that the conditions of confinement he was forced to endure were beyond the bounds of human decency.  Accordingly, I conclude that he has not alleged any deprivation sufficiently extreme to establish a cognizable claim and, therefore, recommend dismissal this claim.

B.   Equal Protection

While housed as a pretrial detainee in the protective custody unit, O'Mara allegedly was denied the same amount of out-of-cell and recreational time and equipment as inmates in the general prison population.  The difference in treatment allegedly violated O'Mara's Fourteenth Amendment right to equal protection.

The Equal Protection Clause of the Fourteenth Amendment mandates that similarly situated persons be treated alike absent a rational basis for doing otherwise.  See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)(citations omitted);  accord Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)(recognizing equal protection claim where plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment).  In the prison context, the Equal Protection Clause of the Fourteenth Amendment forbids a state from arbitrarily treating one group of prisoners worse than

another.  <u>Anderson v. Romero</u>, 72 F.3d 518, 526 (7th Cir. 1995);

<u>see</u> <u>also</u> <u>Young v. King County</u>, 70 Fed. Appx. 939, 941 (9th Cir.

2003) (unpublished) (holding that the Equal Protection Clause

"does not allow pretrial detainees to be *unjustifiably* held in

conditions worse than those under which convicted prisoners are

held.").  The Equal Protection Clause "requires inmates to be

treated equally, unless unequal treatment bears a rational

relation to a legitimate penal interest."  <u>May v. Sheahan</u>, 226

F.3d 876, 882 (7th Cir. 2000); <u>accord</u> <u>Phillips v. Girdich</u>, 408

F.3d 124, 129 (2d Cir. 2005)(citing <u>Shaw v. Murphy</u>, 532 U.S. 223,

225 (2001)).

Thus, "[p]rison officials may differentiate based on

legitimate penological concerns, such as security, and are

accorded substantial deference in such matters."  <u>Davis v.</u>

<u>Milwaukee County</u>, 225 F. Supp. 2d 967, 980 (E.D. Wis. 2002)

(citations omitted).  Even "[p]unitive restrictions or conditions

may be constitutionally placed on pre-trial detainees, provided

that the restrictions further some legitimate governmental

objective (such as addressing a specific institutional violation,

ensuring a detainee's presence at trial, or maintaining safety,

internal order, and security within the institution) and are not

15

excessive in light of the seriousness of the violation."  <u>Evans v. Phelps</u>, No. 06-10078-Civ-KING, 2006 WL 3667138 at *2 (S.D. Fla. Nov. 6, 2006)(citing <u>Rapier v. Harris</u>, 172 F.3d 999, 1006-07 (7th Cir. 1999) and <u>Collazo-Leon v. United States Bureau of Prisons</u>, 51 F.3d 315, 318 (1st Cir. 1995).

The complaint in this action alleges that while housed as a pretrial detainee in the protective custody unit, O'Mara was given less out-of-cell and recreation time and equipment than inmates in the general prison population.  He concedes that he was placed in protective custody because of physical threats made against him by other inmates.  It appears that defendants placed him there to ensure his safety and, therefore, had a legitimate penological justification for their actions.  When he reported the alleged difference in treatment to O'Mara and Dionne, the record defendants offered to transfer him to the general prison population where he would have more out-of-cell and recreational time.  Thus, it appears that when defendants were notified of O'Mara's complaints, they took corrective action and attempted to remedy the problem.  Accordingly, for purposes of preliminary review, I conclude that O'Mara has failed to allege sufficient facts to state a cognizable Fourteenth Amendment equal protection claim and recommend that this claim be dismissed in its entirety.

C.   <u>Meaningful Access to the Courts</u>

Construed liberally, the complaint alleges that defendants interfered with O'Mara's effective communications with his attorney and his legal documents, in violation of his Sixth Amendment right to counsel and First and Fourteenth Amendment right to meaningful access to the courts.

     1.   Interference with Attorney-Client
          Communications

It is undisputed that inmates have a constitutionally protected right of meaningful access to the courts.  <u>See</u> <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974); <u>Boivin v. Black</u>, 225 F.3d 36, 42 (1st Cir. 2000).  <u>See</u> <u>also</u> <u>Bourdon v. Loughren</u>, 386 F.3d 88, 92 (2d Cir. 2004)("Prisoners, including pretrial detainees, "have a constitutional right of access to the courts")(citing <u>Bounds</u>, 430 U.S. at 821)).

> This right is one of the privileges and immunities
> accorded citizens under article 4 of the Constitution
> and the Fourteenth Amendment.  It is also one aspect of
> the First Amendment right to petition the government
> for redress of grievances.  Finally, the right of
> access is founded on the due process clause and
> guarantees the right to present to a court of law
> allegations concerning the violation of constitutional
> rights.

<u>Smith v. Maschner</u>, 899 F.2d 940, 947 (10th Cir. 1990)(citing

Nordgren v. Milliken, 762 F.2d 851, 853 (10th Cir. 1985)).

"[T]he right to counsel and the right of access to the
courts are interrelated, since the provision of counsel can be a
means of accessing the courts." Benjamin v. Fraser, 264 F.3d
175, 186 (2d Cir. 2001).  In challenging regulations which
adversely affect the Sixth Amendment right to counsel by impeding
attorney visitation, a pretrial detainee is not required to
demonstrate actual injury.  Id.  "[I]n the context of the right
to counsel, unreasonable interference with the accused person's
ability to consult counsel is itself an impairment of the right."
Id. at 185.  See also Maine v. Moulton, 474 U.S. 159, 170
(1985)("to deprive a person of counsel during the period prior to
trial may be more damaging than denial of counsel during the
trial itself); Johnson-El v. Schoemehl, 878 F.2d 1043, 1051 (8th
Cir. 1989)(when pretrial detainee's interest in effective
communication with attorney is inadequately respected during
pretrial confinement, the ultimate fairness of eventual trial can
be compromised); Wolfish v. Levi, 573 F.2d 118, 133 (2d Cir.
1978)("[O]ne of the most serious deprivations suffered by a
pretrial detainee is the curtailment of his ability to assist in
his own defense.").

Here, O'Mara alleges that on January 27, 2008, he requested

18

prison officials to forward legal mail to his attorney.  He
further requested Linda Norman, the HCDOC bookkeeper, to deduct
the respective cost of postage from his account.  Although O'Mara
had sufficient funds in his account to pay the postage costs, his
mail allegedly was returned to him and marked "request denied."
When, on January 29, 2008, he submitted a second request to
Norman, and provided her with supporting documents demonstrating
that he was deprived of stamps and stamped envelopes, Norman
again denied his request.  On January 31, 2008, O'Mara submitted
his legal mail with a request to Beaudon, the HCDOC official mail
agent, requesting her to send it C.O.D.  Pinciaro allegedly
returned the mail to O'Mara and denied his request on the basis
that he failed to address it to the HCDOC official mail agent.
The following day, O'Mara informed Granville of the problem who,
in turn, notified Robbins and Beaudon.  Both Robbins and Beaudon
allegedly denied O'Mara's request and failed to ensure that he
would be provided with stamps and postage.  As a result, O'Mara
claims, he was denied effective communications with his attorney
for thirty days and, therefore, denied meaningful access to the
courts.

     If true, O'Mara's allegations may demonstrate that Norman,
Beaudon, Pinciaro and Robbins have interfered with his attorney-

client communications and his right to access the courts. Accordingly, I conclude that for pursposes of preliminary review, he has alleged cognizable Sixth and Fourteenth Amendment claims against Norman, Beaudon, Pinciaro and Robbins.

Without identifying any particular defendant, O'Mara further alleges that defendants confiscated a letter sent to his attorney on November 13, 2007. He concedes, however, that defendants returned the letter to him on November 26, 2007 and explained that it was inadvertently given to another inmate. O'Mara also alleges that on January 9, 2007, all of his legal work was confiscated and not returned to him until January 29, 2007. Because he has not alleged that defendants' actions interfered with his attorney–client communications or otherwise caused him injury, I conclude that O'Mara has failed to allege cognizable Sixth and Fourteenth claims and, therefore, recommend dismissal of those claims.

    2.    Interference with Legal
          and Other Documents

O'Mara further alleges that defendants interfered with and confiscated certain legal and other documents, in violation of his First and Fourteenth Amendment right to meaningful access to the courts.

20

While inmates have a constitutionally protected right of meaningful access to the courts, see Bounds, 430 U.S. at 828, this right only "'requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law.'" Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986)(quoting Bounds, 430 U.S. at 828)).  To establish a claim for denial of the right to access the courts, an inmate must allege that he suffered actual injury as a result of defendants' actions.  See Lewis v. Casey, 518 U.S. 343, 351-52 (1996).  A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials.  Id. at 351-52.

Here, O'Mara alleges that defendants read his legal documents and confiscated and withheld other documents and property while transferring him to another unit.  In addition, while conducting searches of O'Mara's cell, defendants allegedly confiscated his property, including legal papers and "notes of incidents, names, dates and times."  Lastly, O'Mara alleges that he was forced to attend court proceedings without his necessary legal documents and that defendants did not return the documents

until two days after his court proceedings.

Absent actual injury, there is no indication that defendants' actions violated O'Mara's right to access the courts. While O'Mara claims that defendants withheld legal documents and interfered with his legal mail, he has not identified any ensuing constitutional harm related to their acts or omissions.  Nor has he alleged that any actions by defendants that frustrated or impeded a specific legal claim.  Without demonstrating that defendant's interference prevented him from participating meaningfully in the legal process, O'Mara has failed to allege any constitutional deprivation.  Accordingly, I recommend dismissal of this claim in its entirety.

3.   Interference with Mail

Construed liberally, the complaint alleges that Riley and Robbins interfered with O'Mara's legal or privileged mail in violation of his First and Fourteenth Amendment rights.

A claim of interference with legal mail may implicate a pretrial detainee's right of access to the courts and free speech as guaranteed by the First and Fourteenth Amendments.  See Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  In order to state a claim for denial of access to the courts due to interference with legal mail, "a plaintiff must allege that the defendant took or

was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Id.

It is well-settled that prison officials may only open an inmate's legal mail in his or her presence. See Wolff, 418 U.S. at 576-77. With regard to an inmate's privileged mail, an isolated incident involving the inadvertent opening of mail, without any evidence of improper motive or resulting interference with the right to counsel or to access to the courts, does not give rise to a constitutional violation. See Gardner v. Howard, 109 F.3d 427, 431 (8th Cir. 1997). Rather, an inmate must show that prison officials regularly and unjustifiably interfered with his legal mail. Davis, 320 F.3d at 351 (citations omitted).

Here, O'Mara alleges that on August 27, 2007, Riley and Robbins approached him in his cell on Unit 2A and questioned him regarding mail he had recently sent to a state agency in which he reported abuse of a mentally ill inmate. When O'Mara asked why defendants were reading his mail, they replied that it was county property and that it belonged to them. Although O'Mara alleges that defendants' actions were unauthorized and improper, he has identified only one incident of improper conduct. See Davis, 320 F.3d 346 (holding that allegations that prison official on two occasions opened his legal mail outside his presence were

insufficient to state claim for denial of access to courts where inmate did not allege that such interference constituted an ongoing practice of unjustified censorship or caused him to miss court deadlines or in any was prejudice his legal actions). Accordingly, I conclude that he has failed to allege cognizable First and Fourteenth Amendment claims against Riley and Robbins and, therefore, recommend dismissal of the claims against them.

D.   Unreasonable Search and Seizure

O'Mara alleges that defendants searched his cell on a daily basis and in his absence.  While conducting the searches, defendants allegedly confiscated his property, including correspondence, legal papers and documents, in violation of his Fourth and Fourteenth Amendments.

The Supreme Court has found that an inmate's status as a pretrial detainee does not entitle him to the full expectation of privacy in his prison cell that he would have in his home, and that his expectation of privacy is "diminished" by his incarceration.  Hudson v. Palmer, 468 U.S. 517, 524 n.6 (1984) (citing Bell v. Wolfish, 441 U.S. 520, 556–57, 560–61 (1979) (searches of pretrial detainees' cells did not violate the Fourth Amendment and did not constitute punishment violative of the Due Process Clause)).  The facts presented in O'Mara's complaint are

insufficient to state a claim that the searches were unreasonable, or that he had an expectation of privacy in his cell.  Accordingly, I conclude that he has failed to allege a Fourth and Fourteenth Amendment claims and, therefore, recommend dismissal of those claims in their entirety.

     E.   Deprivation of Property

     O'Mara alleges that while conducting searches of his cell and while transferring him to another unit, defendants confiscated and/or withheld certain property, including documents, correspondence, blank writing paper and envelopes. Construed liberally, the complaint alleges that defendants deprived O'Mara of property without due process of law and in violation of his Fourteenth Amendment rights.

     Even assuming that O'Mara possesses a property interest sufficient to warrant protection under the Due Process Clause, he fails to state a claim upon which relief may be granted.  "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available."  Hudson, 468 U.S. at 533; see also Watson v. Caton, 984 F.2d 537, 541 (1st Cir. 1993)(holding that there is no legal

basis for a Section 1983 action where the allegation is that the action was derivation from, and not a reflection of, an established state procedure).  Here, the complaint is void of any allegation that New Hampshire affords no post-deprivation remedy. See Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 33 (1st Cir. 1996) (declining to address whether an adequate post-deprivation remedy is available under state law absent any allegation by the plaintiff).  See also Barr v. Knauer, Civil Action No. 07-2888, 2008 WL 2389472, slip op. at *3 (E.D. Pa. June 11, 2008) (holding that plaintiff failed to state a Fourteenth Amendment due process claim based on the deprivation of personal property where prison grievance procedures provided an adequate post-deprivation remedy.)  Accordingly, I conclude that O'Mara has failed to state a claim under Section 1983 as to the alleged deprivation of property and, therefore, recommend dismissal of this claim in its entirety.

F.   Administrative Segregation

O'Mara alleges that while he was confined at the HCHOC as a pretrial detainee, defendants abridged his Fourteenth Amendment rights by subjecting him to discipline without due process[2]. He

---

[2]O'Mara characterizes his claim as violative of his Fifth, Sixth, Eighth and Fourteenth Amendment rights, however, he has

has also filed a motion to be released from administrative

segregation (document no. 4).

> A pretrial detainee has a Fourteenth Amendment
> right to be free from punishment prior to
> conviction.  While a pretrial detainee may be
> disciplined for a specific institutional infraction
> committed during the period of his detention, the
> discipline imposed must be roughly proportionate to
> the gravity of the infraction.  An arbitrary, or
> disproportionate sanction, or one that furthers no
> legitimate penological objective, constitutes
> punishment (and, thus, is proscribed by the
> Fourteenth Amendment).

Surprenant, 424 F.3d at 13 (citing Bell, 441 U.S. at 535, 538-9

and Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 318 (1st

Cir. 1995)).  Accordingly, I find that O'Mara's complaints

pertaining to the denial of due process arise under the

Fourteenth Amendment.

Ordinarily, when a prisoner is subjected to disciplinary

sanctions, he must prove that the sanction itself was so atypical

of the normal incidents of prison life, and imposed such a

hardship, that he was entitled to due process in order for the

sanction to be constitutionally effected.  Sandin v. Conner, 515

U.S. 472, 483-84 (1995).  Sandin, however, only applies to

---

failed to identify a Fifth, Sixth or Eighth Amendment violation
or any predicate facts in support of such claims.  Accordingly, I
construe his claim solely as a due process claim under the
Fourteenth Amendment.

convicted inmates who might expect a certain amount of punishment as typical of the normal incidents of prison life.  Pretrial detainees, to the contrary, have a constitutionally-protected liberty interest in avoiding any punishment.  Surprenant, 424 F.3d at 17.

In Wolff, the Supreme Court identified the due process requirements for a disciplinary hearing in a prison.  See Wolff, 418 U.S. at 564.  Those requirements include written notice of the charges at least twenty-four hours in advance of the hearing, the ability to call witnesses and present evidence, and that the hearing be presided over by an impartial decision maker.  Id. at 566, 570-71; Surprenant, 424 F.3d at 16.  It follows that a pretrial detainee cannot be placed in administrative segregation as a punishment without a due process hearing and the protections guaranteed by Wolff.  Mitchell v. Dupnik, 75 F.3d 517, 524-25 (9th Cir. 1996)).

Because O'Mara was a pretrial detainee at the HCDOC, he was entitled to the protections of the due process clause if the disciplinary sanctions imposed were at all punitive.  He clearly alleges that following the hearing, defendants imposed punitive restrictions upon him.  Accordingly, I find that he was entitled

to due process protections as outlined by <u>Wolff</u> at his
disciplinary hearing.

O'Mara alleges that following his disciplinary hearing in
February 2008, during which Raymond, McDougall, Scurry and Sawer
were present, defendants caused him to be placed in
administrative segregation for an extended period of time.  The
hearing and processes employed by defendants allegedly failed to
provide O'Mara with due process prior to being classified to
administrative segregation.  Afterwards, O'Mara allegedly was
denied any right to appeal.  He further claims that defendants
placed him in administrative segregation in reprisal for his
filing of a civil action against them and, therefore, that their
actions were not impartial.

As result of defendants' actions, various restrictive
conditions were imposed on O'Mara, including, one-hour out-of-
cell time each day, restricted recreation time, no visitation
privileges and restricted commissary privileges and writing
supplies.  The restrictions allegedly were comparable to those
imposed on inmates in punitive segregation.  O'Mara maintains
that for a period of at least seven months, he was denied any
opportunity to exercise out of his cell and was forced to eat

every meal in his cell.  He further claims that he was confined
to a cell with boarded-up windows and, therefore, was denied any
exposure to natural light.

O'Mara's pretrial status entitled him to due process
protections during his hearing and prior to the imposition of
sanctions and punitive segregation.  For purposes of preliminary
review, I conclude that he has alleged cognizable due process
claims against Raymond, McDougall, Scurry and Sawer.  I further
recommend that a preliminary injunction hearing be scheduled with
regard to those claims.  I recommend that O'Mara's motion to be
released from administrative confinement (document no. 4) be
denied.

II.  Request for Transfer

O'Mara requests a transfer from the HCDOC to another New
Hampshire county facility where the conditions of confinement are
more favorable and less restrictive (document no. 7).  I
liberally construe his request to raise a Fourteenth Amendment
due process claim.

"The Due Process Clause does not protect every change in the
conditions of confinement having a substantial adverse impact on
the prisoner."  Bazzetta v. McGinnis, 423 F.3d 557, 566 (6th Cir.

2005)(citing <u>Sandin</u>, 515 U.S. at 478).  <u>See also</u> <u>Moody v.</u>
<u>Daggett</u>, 429 U.S. 78, 88 n.9 (1976)(stating that not every prison
action that adversely affects the prisoner requires due process,
such as transfer to a substantially less agreeable prison).  It
is well-settled that a prisoner has no constitutional right to be
incarcerated in a particular prison and that he may be
transferred for any reason or for no reason at all, regardless of
differing conditions.  <u>See</u> <u>Meachum v. Fano</u>, 427 U.S. 215, 225-28
(1976).  Even a transfer to a more restrictive facility with more
burdensome conditions is within the normal limits or range of
custody which the conviction has authorized the State to impose.
<u>Id.</u> at 225 (transfer of an inmate from one correctional facility
to another, without more, does not violate the inmate's
constitutional rights, even where conditions in one facility are
more disagreeable).

    For the foregoing reasons, I conclude that O'Mara's request
to be transferred to a less restrictive or more amenable facility
does not rise to the level of a constitutional claim.  I
therefore recommend that his motion to transfer (document no. 7)
be denied.  To the extent he alleges a Fourteenth Amendment due
process claim arising from defendants' failure to transfer him to

another facility, I recommend that his claim be dismissed in its
entirety.

III. Appointment of Counsel

O'Mara moves for appointment of counsel (document no. 3),
asserting that he is unable to effectively represent himself in
this civil proceeding.  An indigent litigant must show that
exceptional circumstances exist to justify appointment of
counsel, such that without counsel the litigant most likely would
be unable to obtain due process of the law.  See DesRosiers v.
Moran, 949 F.2d 15, 23-24 (1st Cir. 1991).  "In determining
whether the circumstances are 'exceptional,' courts have
considered such factors as the merits of the case, the litigant's
capability of conducting a factual inquiry, the complexity of the
legal and factual issues, and the ability of the litigant to
represent [himself]."  Weir v. Potter, 214 F. Supp. 2d 53, 54 (D.
Mass. 2002)(citing Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir.
1986)).

While O'Mara maintains that he is unable to represent
himself effectively, he has not demonstrated an inability to
litigate or other exceptional circumstances to justify the
appointment of counsel.  He has filed an articulate complaint, an

amendment thereto, and several motions in which he has presented his claims clearly and effectively.  At this preliminary stage in the proceedings, appointment of counsel does not appear to be necessary.  Having considered his circumstances and the applicable law regarding his rights to legal representation, I recommend that his motion to appoint counsel (document no. 3) be denied, but without prejudice to it being renewed at a later date should circumstances warrant renewal.

IV.  Municipal Liability

Construed liberally, the complaint names the HCDOC, a municipal entity, as a defendant in this action.  Municipalities and local government entities are "persons" within the meaning of Section 1983.  See Monell, 436 U.S. at 690.  A municipal entity cannot be held liable under Section 1983 on a theory of respondeat superior or vicarious liability; rather the municipality itself must proximately cause the constitutional injury, through promulgation or tacit approval of a policy or custom.  See City of Canton v. Harris, 489 U.S. 378, 385 (1989).  To state a viable Section 1983 claim, a plaintiff must allege in substance that the challenged municipal custom or policy was the "moving force" behind the constitutional violations.  See Board

of the County Comm'rs v. Brown, 520 U.S. 397, 404 (1997); McCabe
v. Life-Line Ambulance Serv., 77 F.3d 540, 544 (1st Cir. 1996)
(citations omitted).  Supervisors similarly can be held liable
only on the basis of their own acts or omissions, amounting to
reckless or callous indifference to the constitutional rights of
others.  See Gaudreault v. Salem, 923 F.2d 203, 209 (1st Cir.
1990).

     In this action, if O'Mara intends to pursue claims against
the HCDOC, he must, at a minimum, allege that his constitutional
deprivations were the product of a municipal custom or policy.
Liberally construing the complaint, I conclude that the wrongful
conduct ascribed to the HCDOC was the product of an
unconstitutional municipal custom or policy.  The alleged
deprivations stem from HCDOC policy governing the treatment of
pretrial detainees.  Construed liberally, the complaint suggests
that HCDOC was the "moving force" behind the acts or omissions
allegedly taken by its subordinate officers.  Accordingly, I
conclude that the complaint states a viable claim premised upon
municipal liability against the HCDOC.

     The complaint also names O'Mara in his official capacity as
the Superintendent of the HCDOC.  Official capacity suits against

34

officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55.   See also Brandon v. Holt, 469 U.S. 464, 471 (1985)(suits against parties in their official capacities treated as suits against the municipality).   As an employee of the HCDOC, Superintendent O'Mara had knowledge of the municipal policy that allegedly caused the underlying deprivations.   Because I find municipal liability as to the HCDOC, I extend that reasoning to O'Mara and conclude that the official capacity claims against him are cognizable for purposes of preliminary review.

## Conclusion

For the reasons stated above, I conclude that O'Mara has alleged the following claims:

(1)   Fourteenth Amendment claims arising from inhumane cell conditions against O'Mara, Dionne, Brown and Menic;

(2)   Sixth and Fourteenth Amendment claims arising from interference with the right to attorney–client communications and the right to access the courts against Norman, Beaudon, Pinciaro and Robbins;

(3)   Fourteenth Amendment due process claims arising from O'Mara's confinement in administrative segregation against Raymond, McDougall, Scurry and Sawer; and

(4)   related municipal liability claims against the HCDOC.

I recommend dismissal of all remaining claims.  I further recommend that O'Mara's motion to appoint counsel (document no. 3), motion for transfer (document no. 7) and motion to be released from administrative segregation (document no. 4) be denied.  Lastly, I recommend that a preliminary injunction hearing be scheduled with regard to O'Mara's claims arising from his administrative segregation.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any further objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. §

636(b)(1); <u>Unauthorized Practice of Law Committee v. Gordon</u>, 979

F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>,

792 F.2d 4, 6 (1st Cir. 1986).


_____

James R. Muirhead
United States Magistrate Judge


Date: July 17, 2008

cc:   Timothy M. O'Mara, pro se