UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Timothy M. O'Mara,
    Plaintiff

    v.                                            Civil No. 08-cv-51-SM
                                                  Opinion No. 2009 DNH 107
David Dionne; Timothy Robbins;
Lynda Normand; Steven Beaudoin;
Carl Brown; Jeremy Menec;
Tony Sawyer; William McDougall;
Willie Scurry; William Raymond;
Chad Pinciaro; James O'Mara;
individually, and as Superintendent
of the Hillsborough County Department
of Corrections; Hillsborough County
Department of Corrections,
    Defendants

**O R D E R**

Pro se plaintiff Timothy O'Mara challenges the conditions of his confinement as a pre-trial detainee in the Hillsborough County House of Corrections. 42 U.S.C. § 1983. Following review by the magistrate judge, his case consists of: (1) a Fourteenth Amendment claim alleging inhumane cell conditions; (2) a claim under the Sixth and Fourteenth Amendments alleging interference with his right to attorney-client communications and his right to access the courts; (3) a Fourteenth Amendment claim arising from the process by which he was placed in administrative segregation; (4) a Fourteenth Amendment claim alleging denial of out-of-cell and recreation time; and (5) related municipal liability claims against the Hillsborough County Department of Corrections

("HCDOC"), under the doctrine established in Monell v. Department of Social Services, 436 U.S. 658 (1978). Before the court is defendants' motion for summary judgment. Plaintiff objects.[1] For the reasons given, defendants' summary judgment motion is granted in part and denied in part.

**Standard of Review**

Summary judgment is appropriate when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.' " Dávila v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12 (1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386 F.3d 5, 7 (1st Cir. 2004)). While a defending party may move for summary judgment "with or without supporting affidavits," FED. R. CIV. P. 56(b), "[a] supporting . . . affidavit must be made on personal knowledge, set[ting] out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e)(1). And, "[i]f a

---

[1] More precisely, plaintiff has filed a document titled "Plaintiffs Objection to Defendants Motion for Summary Judgment," but he has attached no supporting affidavits. The objection bears a notary seal, but no sworn statement attesting to the truth of the facts stated therein.

paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit." Id.

### Discussion

Defendants move for summary judgment on three grounds. In addition to arguing that they are entitled to judgment as a matter of law on the merits, they also argue that plaintiff has failed to exhaust his administrative remedies, as required by 42 U.S.C. § 1997e, and, that they are entitled to qualified immunity.

Defendants' exhaustion argument, and much of their argument on the merits is supported by the affidavit of David Dionne, Assistant Superintendent of the HCDOC. That affidavit explains:

> I am familiar with the plaintiff, Timothy O'Mara, who is an inmate at the Hillsborough County Department of Corrections [HCDOC] (also known as the Valley Street Jail). I had some involvement in issues relating to him during his confinement as noted in this affidavit. Additionally, in preparing this affidavit, I have reviewed his inmate/institutional file located at the jail and spoken with officers and other staff involved with other issues raised in his complaint to this court.

(Dionne Aff. (document no. 44-3) ¶ 3.) Dionne's affidavit is comprised of both personal knowledge and inadmissable hearsay, i.e., assertions of fact based upon what Dionne learned by

speaking with other HCDOC officers and staff members. But, the affidavit does not generally distinguish between factual statements that are based on Dionne's personal knowledge and those that are based on knowledge he gained by speaking with others. In other words, there is no way to tell which parts of the affidavit refer to admissible evidence and which refer to inadmissible hearsay, which means that the entire affidavit must be disregarded. Moreover, the affidavit refers to and summarizes many documents associated with petitioner's incarceration, but none of those documents are attached.

In short, the affidavit does not meet the requirements of Rule 56(e)(1). The affidavit is not useful as support for defendants' summary judgment motion. It is particularly unhelpful on the question of exhaustion. Dionne states that "[t]he plaintiff filed a number of grievances during his incarceration, including the following . . . ." (Dionne Aff. ¶ 20.) What follows is a summary of plaintiff's grievances, in tabular form. (Id. at 9-11.) But, Dionne does not state that his summary includes all the grievances O'Mara filed during the relevant time periods, which would be necessary to establish lack of exhaustion, nor does he attach sworn or certified copies of the grievances he refers to, as required by Rule 56(e).

Absent the factual support purportedly provided by the Dionne affidavit, defendants cannot demonstrate entitlement to summary judgment on Claims One (cell conditions) and Three (placement in administrative segregation), either on grounds of exhaustion or on the merits. Moreover, as defendants' argument on qualified immunity rests in large measure on the Dionne affidavit and/or their arguments on the merits, defendants' invocation of qualified immunity is not sufficient to gain them summary judgment on Claims One and Three. Finally, with Claims One and Three still viable, defendants are not entitled to summary judgment on their <u>Monell</u> claim.

Defendants' arguments regarding Claims Two and Four stand on a different footing, as they are supported by affidavits largely free of the deficiencies found in the Dionne affidavit. Accordingly, the court considers each claim in turn.

A. Claim Two: Right to Counsel and Access to the Courts

In his preliminary review of the complaint, the magistrate judge described Claim Two in the following way:

> Here, O'Mara alleges that on January 27, 2008, he requested prison officials to forward legal mail to his attorney. He further requested L[y]nda Norman[d], the HCDOC bookkeeper, to deduct the respective cost of postage from his account. Although O'Mara had sufficient funds in his account to pay the postage costs, his mail allegedly was returned to him and marked "request denied." When, on January 29, 2008, he

> submitted a second request to Norman[d], and provided
> her with supporting documents demonstrating that he was
> deprived of stamps and stamped envelopes, Norman[d]
> again denied his request.  On January 31, 2008, O'Mara
> submitted his legal mail with a request to [Steven]
> Beaudo[i]n, the HCDOC official mail agent, requesting
> her to send it C.O.D.  [Chad] Pinciaro allegedly
> returned the mail to O'Mara and denied his request on
> the basis that he failed to address it to the HCDOC
> official mail agent. The following day, O'Mara informed
> [Corrections Officer] Granville of the problem who, in
> turn, notified [Timothy] Robbins and Beaudo[i]n.  Both
> Robbins and Beaudo[i]n allegedly denied O'Mara's
> request and failed to ensure that he would be provided
> with stamps and postage.  As a result, O'Mara claims,
> he was denied effective communications with his
> attorney for thirty days and, therefore, denied
> meaningful access to the courts.

(Report & Recommendation (document no. 10) at 18-19.)  According to the affidavit of the HCDOC staff member in charge of the commissary, O'Mara was prevented from sending a package to his attorney because he failed to comply with various HCDOC rules requiring inmates to affix postage to outgoing mail and to purchase postage from the commissary.[2]  (Normand Aff. ¶¶ 2, 10-12.)[3]  In his objection to summary judgment, plaintiff indicates

---

[2] Specifically, in lieu of affixing proper postage, O'Mara first asked to have postage affixed for him, with the cost thereof deducted from his inmate account, and then attempted to send the package C.O.D.  Neither method of sending mail appears to comply with relevant HCDOC regulations.

[3] While Normand's affidavit refers to, but does not attach, the three inmate request forms associated with O'Mara's unsuccessful attempts to mail his package, O'Mara does not contest Normand's description of the reasons why his package was returned to him.  Instead, he appears to advance various reasons why the HCDOC mail regulations should not have been applied to him under the circumstances of this case.

that he ordered stamps, writing paper, and envelopes on February 4, and that those items were delivered to him three days later. He does not explain how the refusals to send his legal mail, on January 27, 29, and 31, denied him effective communication with his attorney for thirty days.

Defendants argue that Claim Two should be dismissed for lack of exhaustion, and that they are entitled to judgment as a matter of law on the merits.  While the exhaustion argument might prove to be meritorious, it fails at this juncture, because it relies on the defective Dionne affidavit.  Accordingly, the court will turn to the merits.

Defendants argue that they are entitled to judgment as a matter of law on Claim Two because O'Mara has not alleged any actual injury, and because they have produced evidence that notwithstanding O'Mara's inability to send legal mail to his attorney for several days, he had several meetings with his attorney during the thirty-day period during which he claims to have been denied effective communication.  Defendants' first argument is legally incorrect, and their second argument is unavailing because it rests on facts drawn from the Dionne affidavit.  Defendants are, however, entitled to judgment as a matter of law on other grounds.

In <u>Procunier v. Martinez</u>, 416 U.S. 396 (1974), <u>overruled in part on other grounds by</u> <u>Thornburgh v. Abbott</u>, 490 U.S. 401 (1989), the United States Supreme Court explained:

> The constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. This means that inmates must have a reasonable opportunity to seek and receive the assistance of attorneys. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid.

<u>Id.</u> at 419 (citing <u>Ex parte Hull</u>, 312 U.S. 546 (1941)). In <u>Benjamin v. Fraser</u>, 264 F.3d 175 (2d Cir. 2001), the court explained that when a pre-trial detainee asserts a Sixth Amendment claim, there is no requirement for him to allege or prove any injury beyond an unjustifiable obstruction of his access to counsel. <u>See</u> <u>id.</u> at 186 ("[H]ere we are concerned with the Sixth Amendment right of a pretrial detainee, in a case brought against him by the state, to utilize counsel in his defense. It is not clear to us what "actual injury" would even mean as applied to a pretrial detainee's right to counsel."). The court further explained:

> Having determined that . . . both the due process right of access to the courts and the Sixth Amendment right to counsel are implicated, we apply the standards set out in <u>Procunier</u>, 416 U.S. at 419 ("unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts"), and <u>Bell</u> [<u>v. Wolfish</u>], 441 U.S. [520,]

8

> 547 [(1979)] (when an institutional restriction on
> pretrial detainees infringes a specific constitutional
> guarantee [i.e., the Sixth Amendment], "the practice
> must be evaluated in the light of the central objective
> of prison administration, safeguarding institutional
> security").  We note that this circuit has adopted
> similar standards in Wolfish [v. Levi], 573 F.2d [118,]
> 133 [(2d Cir. 1978)], finding prison regulations
> restricting pretrial detainees' contact with their
> attorneys to be unconstitutional where they
> "unreasonably burdened the inmate's opportunity to
> consult with his attorney and to prepare his defense."
> Similarly, in Cobb [v. Aytch], 643 F.2d [946,] 957 [(2d
> Cir. 1981)] we enjoined prison transfers that
> "significantly interfered" with pretrial detainees'
> access to counsel.

Benjamin, 264 F.3d at 187 (parallel citations omitted).

Applying the principles described in Procunier and Benjamin (and the cases cited therein), the court finds that defendants are entitled to judgment as a matter of law on Claim Two.  First, this case is different from Procunier, Benjamin, and Wolfish, all of which involved regulations pertaining directly to attorney contact with inmates.  See Procunier, 416 U.S. at 398 (inmates challenged prison's "ban against the use of law students and legal paraprofessionals to conduct attorney-client interviews with inmates"); Benjamin, 264 F.3d at 179 (inmates challenged visitation procedures under which "defense attorneys routinely face[d] unpredictable, substantial delays in meeting with clients . . . [and were] forced to wait between 45 minutes and two hours, or even substantially longer, after arriving at a facility to see a client"); Wolfish, 573 F.2d at 133 (inmates challenged

regulations under which meetings with attorneys were limited to two hours per day, or else took place in public visiting rooms, without adequate privacy).

Here, by contrast, petitioner does not complain about a policy pertaining to attorney contact.  Rather, he claims that defendants limited his ability to contact his attorney by requiring him to comply with various HCDOC rules of general applicability pertaining to the manner in which inmates are required to send all of their outgoing mail.  This case is also readily distinguishable from Cobb, a case cited in Benjamin that did not involve a specific limitation on attorney visitation.  The prison policy at issue in Cobb – the transfer of pre-trial detainees incarcerated in Philadelphia to facilities at least ninety miles away – placed a substantially greater burden on access to counsel than the eleven-day delay in sending a letter at issue in this case.  See Cobb, 643 F.2d at 949, 957.

Obviously, pre-trial detainees such as plaintiff have a constitutional right to counsel, but jail officials are not required to facilitate communication between inmates and counsel at any time or in any manner that a detainee might desire.  "As concerns the flow of mail from a penal institution, [the Tenth Circuit] recognized[d] and approve[d] the general rule that the regulation thereof is essentially an administrative matter for

prison officials and that their action in regard thereto is not subject to judicial review except under the most unusual circumstances." LeVier v. Woodson, 443 F.2d 360, 361 (10th Cir. 1971) (citing Cox v. Crouse, 376 F.2d 824 (10th Cir. 1967); Pope v. Daggett, 350 F.2d 296 (10th Cir. 1965). The circumstances of this case are not unusual enough to warrant an exception to the general rule recognized in LeVier. In sum, the HCDOC mail rules, as applied to plaintiff's attempt to mail a package to his attorney, did not "unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts," Procunier, 416 U.S. at 419, or "unreasonably burden[ ] [his] opportunity to consult with his attorney and to prepare his defense," Wolfish, 573 F.2d at 133. Accordingly, on the undisputed factual record, defendants are entitled to judgment as a matter of law on Claim Two.

B. Claim Four: Out-of-Cell and Recreation Time

In his report and recommendation on plaintiff's motion for reconsideration, the magistrate judge described Claim Four in the following way:

> In his original complaint, O'Mara alleged that while he was housed in the protective custody unit as a pretrial detainee, defendants denied him adequate out-of-cell and recreation time. From June 20, 2007 to the present, he allegedly was afforded only two hours a day of out-of-cell time, which purportedly was allocated into less-than-one-hour intervals. From June 20, 2007 to November 11, 2007, he allegedly lost nine to eleven

11

> hours of out-of-cell time each week.  He further
> alleged that when he was confined on Unit 1C for a
> period of thirty days, he was denied any opportunity to
> exercise.  He allegedly reported the deprivations to
> Superintendent O'Mara and Dionne, however, they failed
> to remedy the problem or take adequate corrective
> action.
>
> In his motion for reconsideration . . . O'Mara
> clarifies that from November 11, 2007 to June 23, 2008,
> he was denied any opportunity to exercise out of his
> cell.  He further clarifies that he was "locked in a
> cell 22 hours a day" and was subjected to double-
> celling for a period of seven months.  In addition, he
> alleges that the denial of adequate out-of-cell and
> recreation time has adversely affected his mental well
> being and has caused him to suffer psychological or
> physical problems, including headaches, muscle
> soreness, skin infections, dizziness, weight loss and
> loss of vision and hair.  He adds that the deprivations
> have exacerbated his pre-existing and diagnosed bipolar
> disorder and suicidal tendencies.  Lastly, he broadly
> alleges that he has been denied medication.
>
> O'Mara's complaints of being denied adequate out-
> of-cell time and recreation time for a significant
> period of time, <u>combined with his allegations of
> resulting psychological and physical problems</u>, allege
> deprivations sufficiently extreme to establish a
> cognizable constitutional claim.

(Report & Recommendation (document no. 29-2) at 3-4 (footnote and citations omitted, emphasis added).)

Defendants argue that Claim Four should be dismissed for lack of exhaustion, because plaintiff claims that he was denied out-of-cell time, but grieved only the way in which his out-of-cell time was broken up into multiple segments, not a denial of out-of-cell time.  That argument fails for three reasons.  First, it relies on the Dionne affidavit, which must be disregarded.

Moreover, even if the Dionne affidavit were to be considered, it would not support defendants' point.  Dionne's summary of plaintiff's grievances describes the out-of-cell time grievance as follows:

> grieving lack of out of cell time, gets 2 1 hour period, not one 2 hour period, divided up into bits and pieces, does not have enough time to contact Atty –

(Dionne Aff. at 10.)  Dionne's affidavit demonstrates that plaintiff did grieve a lack of out-of-cell time.  So, defendants' argument rests on an unsupported factual premise, that, in fact, would be refuted by Dionne's affidavit, were it considered. Moreover, even if plaintiff had not expressly grieved a "lack of out of cell time," he did, plainly, grieve the way in which his out-of-cell time was allotted, and under the standard described in Beltran v. O'Mara, 405 F. Supp. 2d 140 (D.N.H. 2005), that was sufficient to exhaust the claim concerning out-of-cell time in this case.  See Id. at 151-53.

    Turning to the merits, defendants appear to recognize that the magistrate judge allowed plaintiff's out-of-cell-time claim to proceed.  (See Defs.' Mem. of Law (document no. 44-2) at 7 n.5).  Yet, they devote less than one sentence of their memorandum of law to that claim ("Plaintiff . . . had on average, two hours out of cell time per day (though he refused this allotment on several occasions . . .)").  They make no legal

13

argument, and do not address plaintiff's allegations of physical and psychological problems causally related to inadequate out-of-cell time, which were the very allegations that provided the bases for the magistrate judge's recommendation to allow Claim Four to move forward.  Given defendants' underdeveloped argument on the out-of-cell-time issue, they have not demonstrated entitlement to judgment as a matter of law on Claim Four.

## Conclusion

For the reasons given, defendants' motion for summary judgment (document no. 44) is granted as to Claim Two but otherwise denied.  Moreover, because Claim Two is the only claim that pertains to defendants Normand, Beaudoin, Pinciaro, and Robbins, they are dismissed from the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

July 20, 2009

cc:  Timothy M. O'Mara, pro se
     John A. Curran, Esq.
     Elizabeth L. Hurley, Esq.