UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Timothy M. O'Mara,
 Plaintiff

  v.           Civil No. 08-cv-51-SM
               Opinion No. 2009 DNH 147
David Dionne; Carl Brown;
Jeremy Menec; Tony Sawyer;
William McDougall; Willie Scurry;
William Raymond; James O'Mara,
individually, and as Superintendent
of the Hillsborough County
Department of Corrections; and
Hillsborough County Department
of Corrections,
 Defendants

## O R D E R

Pro se plaintiff Timothy O'Mara challenges the conditions of
his confinement as a pre-trial detainee in the Hillsborough
County House of Corrections.  42 U.S.C. § 1983.  His case
consists of: (1) a Fourteenth Amendment claim alleging inhumane
cell conditions; (2) a Fourteenth Amendment claim challenging the
process by which he was placed in administrative segregation; (3)
a Fourteenth Amendment claim alleging denial of out-of-cell and
recreation time; and (4) related municipal-liability claims
against the Hillsborough County Department of Corrections under
the doctrine established in Monell v. Department of Social
Services, 436 U.S. 658 (1978).  Before the court is defendants'

renewed motion for summary judgment.[1]  Plaintiff has filed no
objection.  For the reasons given, defendants' renewed summary
judgment motion is granted in part and denied in part.

### Summary Judgment Standard

A summary judgment motion should be granted when the record
reveals "no genuine issue as to any material fact and . . . the
moving party is entitled to a judgment as a matter of law."  FED.
R. CIV. P. 56(c).  "The object of summary judgment is to 'pierce
the boilerplate of the pleadings and assay the parties' proof in
order to determine whether trial is actually required.' "  Dávila
v. Corporación de P.R. para la Diffusión Pública, 498 F.3d 9, 12
(1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386
F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh
the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial."  Noonan v.
Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and
internal quotation marks omitted).  When ruling on a party's
motion for summary judgment, a trial court "constru[es] the
record in the light most favorable to the nonmovant and
resolv[es] all reasonable inferences in [that] party's favor."
Meuser v. Fed. Express Corp., 564 F.3d 507, 515 (1st Cir. 2009)

---

[1] Unless otherwise noted, references to defendants' motion
for summary judgment are to the renewed motion (document no. 54)
and the memorandum of law in support thereof (document no. 54-2).

(citing <u>Rochester Ford Sales, Inc. v. Ford Motor Co.</u>, 287 F.3d

32, 38 (1st Cir. 2002)).


**Background**

Timothy O'Mara was incarcerated in the Hillsborough County

House of Corrections ("jail"), as a pre-trial detainee, on two

occasions relevant to this matter: from January 17, 2007, through

February 13, 2007, and from June 15, 2007, through October 27,

2008.


During O'Mara's incarceration, the Hillsborough County

Department of Corrections ("department") had a formal grievance

procedure that provided as follows:

The following are the steps of the grievance procedure:

- Step 1: Informal Resolution – You must make a
  genuine attempt to seek an informal
  resolution of your problem with the staff
  member concerned.

- Step 2: The second step is initiated using
  the Inmate Request Form format.  Fill out an
  Inmate Request Form stating your problem and
  suggested remedy.  Submit the form to your
  Unit Officer.  Most request forms will be
  answered within seven (7) working days of
  receipt.

- Step 3: If you are dissatisfied with the
  response to your Inmate Request Form, you may
  file an Inmate Grievance Form.  The Captain
  or designee has fifteen (15) working days
  from receipt to review your grievance and

3

>    reply unless there are extenuating
>    circumstances.
>
>    Decisions made by the county correctional facility's
>    disciplinary hearings officer, or classification
>    officer, cannot be appealed through the grievance
>    procedure.

(Defs.' Mot. Summ. J., Ex. G (Hillsborough Cty. Dep't of Corr.

Handbook), at 20.)


    Classification decisions have a separate appeal process,

which provides as follows:

>    Your classification status will be reviewed
>    periodically during your incarceration and may change
>    based on new information.  You may appeal your
>    classification assignment by submitting a
>    Classification Appeal Form to the Superintendent or his
>    designee.  Classification Appeal Forms may be obtained
>    by sending an inmate request form to the Classification
>    Officer.  Classification Appeal Forms received more
>    than three business days after being issued will not be
>    considered.

(Id. at 7.)


    When O'Mara was booked into the jail he "was initially

evaluated by Mr. Robert Bourgeois on June 16, 2007 and placed on

level #3, which is 'high-medium' security status . . . [because

he] was a suicide risk and . . . his alleged criminal offense

involved assaultive behavior."  (Dionne Aff. (document no. 54-3)

¶ 6.)  On June 21, O'Mara requested that he be placed in

protective custody, stating: "I do not feel safe on this unit. It is known that I am a registered sex offender.  Although I have not been threatened by anyone I still don't feel safe."  (Defs.' Mot. Summ. J., Ex. A, at 006.)  His request was granted.

On February 19, 2008, the department's classification committee held a hearing on O'Mara's classification status. Under the heading "Reason for the Hearing," the committee's Record of Decision says: "Inmate has demonstrated violent and aggressive behavior."  (Defs.' Mot. Summ. J., Ex. A, at 004.) The hearing resulted in the following decision: "This committee has determined that inmate O'Mara . . . will be placed in Administrative Segregation for a period of 30 days.  On or about 3/19/08, inmate O'Mara will be reviewed for determination of any future classification status change."  (Id. at 004.)  O'Mara filed a Classification Appeal Form, and his appeal was granted in part and denied in part.  (Id. at 003.)  On March 19, the classification committee held a second hearing and determined that O'Mara "should be removed from Administrative Segregation," (id. at 001), and ruled that "Inmate O'Mara . . . is to be housed on unit 1–C as a Protective Custody inmate" (id. at 002.)

O'Mara filed the complaint in this case in February of 2008, and amended it in June.  His case now consists of four claims.

Claim One is a Fourteenth Amendment claim arising from inhumane cell conditions, based generally upon allegations that defendants O'Mara, Dionne, Brown, and Menec: (a) placed defendant O'Mara in a cell that lacked adequate ventilation and exposed him to "poisonous gases" and noxious fumes; (b) served him inadequate and nutritionally deficient meals; (c) served those meals on trays contaminated with mold and mildew; and (d) placed him at risk of harm by housing him with inmates who had higher security classifications than he did.[2]

Claim Two is that defendants Raymond, McDougall, Scurry, and Sawyer violated O'Mara's Fourteenth Amendment rights by causing him to be placed in administrative segregation in reprisal for filing a civil action against them, and did so without giving him due process or the right to appeal.

Claim Three is that defendants O'Mara and Dionne violated plaintiff's rights under the Fourteenth Amendment by denying him an adequate amount of out-of-cell and recreation time.  Claim Four is for municipal liability under the doctrine established in Monell, 436 U.S. 658.

---

[2] O'Mara's additional claims concerning the monotony of his meals and the jail's practice of passing food under his cell door to be consumed in his cell have been dismissed.

**Discussion**

Defendants advance three arguments: (1) O'Mara has not exhausted his administrative remedies; (2) Dionne's affidavit and the institutional records attached thereto entitle defendants to judgment on the merits on O'Mara's claims concerning cell-conditions, placement in administrative segregation, and lack of out-of-cell time; and (3) judgment in their favor on O'Mara's three substantive claims entitles them to judgment on his <u>Monell</u> claim.   The Court proceeds claim by claim.

A.   Claim One: Cell Conditions

Defendants first argue that O'Mara has not exhausted the administrative remedies he should have used to seek redress for the allegedly inhumane cell conditions about which he now complains.   Regarding exhaustion, the Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).   Moreover, the PLRA requires "proper exhaustion," <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006), defined as "compliance with an agency's deadlines and other critical procedural rules," <u>id.</u> at 90.   "[F]ailure to exhaust is an

7

affirmative defense under the PLRA." <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007).  A defendant who demonstrates lack of exhaustion is entitled to dismissal of the unexhausted claims in the plaintiff's complaint.  <u>See</u> <u>Medina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31, 36 (1st Cir. 2002).

In support of their motion for summary judgment, defendants have produced all the Inmate Request Forms and all the Inmate Grievance forms O'Mara submitted during his incarceration.  Given the three-step grievance procedure in place during O'Mara's incarceration, it is necessary for a particular claim to have reached the Inmate Grievance Form stage for it to qualify as fully exhausted.  Two of the four grounds for O'Mara's cell-conditions claim plainly do not cross that threshold.  There is no record that he filed either an Inmate Request Form or an Inmate Grievance Form concerning the ventilation of his cell. Regarding his claim that he was placed at risk of harm by being housed with inmates with higher security classifications while in protective custody, the record includes neither an Inmate Request Form nor an Inmate Grievance Form addressing that issue.[3]

_____

[3] The only mention O'Mara made of his concerns about his fellow inmates, subsequent to his initial request to be placed in protective custody, appears in a March 30, 2008, Inmate Request Form in which he wrote: "I wish to inform the Classification Officer that I have no issues of conflict with any PC [protective custody] inmates in this jail.  I wish to be informed of any PC inmate who claims to be an enemy to me or considers me to be an

Accordingly, the undisputed factual record demonstrates that O'Mara did not exhaust his administrative remedies for those complaints.

Turning to the remaining grounds for Claim One, defendants acknowledge that O'Mara did grieve the alleged contamination of food trays (Defs.' Memo. of Law, at 5), and the record submitted by the defendants demonstrates full exhaustion (see Defs.' Mot. Summ. J., Ex. I, at 5, 33–34).  That leaves the portion of Claim One described by the magistrate judge as follows:

> O'Mara further alleges that on a daily basis, defendants served him "sack lunches" that were nutritionally deficient and inadequate in servings, all of which caused him to suffer a weight loss of more than twenty pounds in one month.  Defendants allegedly served him sack lunches on a daily basis from June 2007 to the present.

(Report & Recommendation (document no. 10), at 12 (footnote omitted).)  Defendants argue that "O'Mara complains [in this suit] about the quantity and nutritional quality of the meals provided to him while in custody at HCDOC; however, in his grievances, he complains about the manner in which the meals were served, the alleged lack of variety in the brown bag lunches, and

---

enemy."  (Defs.' Mot. Summ. J., Ex. H. at 0053.)  The Classification Supervisor, W. Raymond, responded: "Request denied."  (Id.)  O'Mara did not follow up by filing an Inmate Grievance Form.

the temperature of some items." (Defs.' Memo. of Law, at 6.)  In
defendants' view, the food-related issues O'Mara raises in this
suit are sufficiently different from those he grieved to make
those grievances insufficient to satisfy the exhaustion
requirement.  Defendants' point is well taken.

The operative principle regarding exhaustion is that when
utilizing a prison grievance procedure, "inmates must provide
enough information about the conduct of which they complain to
allow prison officials to take appropriate responsive measures."
Beltran v. O'Mara, 405 F. Supp. 2d 140, 151 (D.N.H. 2005)
(quoting Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004);
citing Johnson v. Johnson, 385 F.3d 503, 517 (5th Cir. 2004);
Burton v. Jones, 321 F.3d 569, 575 (6th Cir. 2003); Strong v.
David, 297 F.3d 646, 650 (7th Cir. 2002); Brown v. Sikes, 212
F.3d 1205, 1207 (11th Cir. 2000).  That is,

> [a]s the Second Circuit reasoned in Testman,
>
>> Uncounselled inmates navigating prison
>> administrative procedures without assistance
>> cannot be expected to satisfy a standard more
>> stringent than that of notice pleading [through
>> their grievances].  Still, the PLRA's exhaustion
>> requirement does require that prison officials be
>> "afford[ed] . . . time and opportunity to address
>> complaints internally."
>
> 380 F.3d at 697 (quoting Porter [v. Nussle,], 534 U.S.
> [516,] 524-25 (2002).

Beltran, 405 F. Supp. 2d at 151.

On October 27, 2007, O'Mara submitted an Inmate Request Form
stating: "Requesting grievance for the excessive use of 'sack
lunches.'  This diet has proven to be a monotonous diet.  Served
six days a week then one day the same food only served in a
tray."  (Defs.' Mot. Summ. J., Ex. I, at 0030.)  In the Inmate
Grievance Form he filed the next day, O'Mara stated:

> I am grieving the excessive use of "sack lunches" six
> days a week.  This practice of serving balogna, spicy
> balogna and balogna disguised as ham is a monotonous
> diet.  No ordinary person would eat this same food
> every day, day after day, week after week, month after
> month.  Sack lunches sent to unit for lunch then
> returned to kitchen as leftovers are returned the
> following day.  I know this because I have marked them
> in the past.

(Defs.' Mot. Summ. J., Ex. I., at 0029).[4]  O'Mara's grievance
plainly put jail officials on notice that he was displeased about
the lack of variety in the sack lunches he was given, but it gave
no indication that he thought he was not getting enough to eat.
To the contrary, the grievance indicated that O'Mara was sending
uneaten food back to the kitchen.  The court concludes that

---

[4] Two days later, O'Mara received the following response:
"All meals follow a daily balance of nutrition.  These meals are
provided to the inmate population.  Meals are changed and rotated
daily and sometimes weekly and monthly.  Your grievance is
unfounded.  No further action required."  (Defs.' Mot. Summ. J.,
Ex. I, at 0029.)

O'Mara did not exhaust his administrative remedies with regard to his claim that the provided sack lunches were nutritionally deficient.

Based on the forgoing, Claim I is reduced to a Fourteenth Amendment conditions-of-confinement claim based on the use of contaminated food trays.  The Magistrate Judge described that claim: "They [defendants] also allegedly served him meals on food trays that were rusted, cracked and filled with contaminated water, mold and mildew.  After eating food served on these trays, O'Mara allegedly experienced digestive problems, stomach pain, diarrhea and headaches."  (Report & Recommendation, at 12.) Defendants argue that they are entitled to judgment as a matter of law on the merits of O'Mara's cell-conditions claim, but have not specifically addressed the food tray issue.[5]  Rather, they simply argue that "nothing in Mr. O'Mara's medical chart corroborates adverse health effects from allegedly uncivilized housing conditions" (Defs.' Memo. of Law, at 10-11), and that "[u]nder the controlling standards, such conditions are, as a matter of law, insufficient to allow the current 'conditions' claims to proceed to a federal jury and should be resolved by

---

[5] Dionne mentions food trays in his affidavit, but only says that O'Mara "grieved the food trays used to serve his meals." (Dionne Aff. ¶ 28.)  That is, Dionne's affidavit contains no evidence related to whether a genuine material factual dispute exists.

brevis disposition for the defendants" (id. at 11 (footnote
omitted)).

Under the controlling standards, prison officials "must
provide humane conditions of confinement; [and] must ensure that
inmates receive adequate food, clothing, shelter, and medical
care, and must 'take reasonable measures to guarantee the safety
of the inmates.' "  Farmer v. Brennan, 511 U.S. 825, 832 (1994)
(quoting Hudson v. Palmer, 468 U.S. 526–27 (1984)).  That
constitutional requirement is violated when two conditions are
met: (1) "the deprivation alleged [is], objectively 'sufficiently
serious,' " Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter,
501 U.S. 294, 298 (1991)), i.e., it "result[s] in the denial of
'the minimal civilized measure of life's necessities,' " Farmer,
511 U.S. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347
(1981)); and (2) the accused prison official has "a sufficiently
culpable state of mind," Farmer, 511 U.S. at 834 (citation and
internal quotation marks omitted), amounting to "deliberate
indifference to inmate health or safety," id. (citation and
internal quotation marks omitted).

O'Mara first objected to the jail's allegedly contaminated
food trays in an Inmate Request Form dated October 20, 2007.  He
filed an Inmate Grievance Form the next day, in which he wrote:

> I am grieving the use of the old tan food trays.  These
> trays are contaminated from the inside out with mold
> and mildew.  These trays are cracked and leak
> contaminated water into food that is served for
> inmates.  The contaminated trays are noticeably heavier
> than the good trays.
>
> As a former inmate worker in the kitchen I brought
> this problem to the cook[']s attention in 2006.

(Defs.' Mot. Summ. J., Ex. I, at 0033.)  He received the

following response: "Trays are taken out of service daily.  This

will continue as serve inmates meals.  Thank you for the

information.  No further action required."  (Id.)  O'Mara next

raised the issue of contaminated food trays in an Inmate

Grievance Form dated March 21, 2008.  That form was ostensibly

prompted by cold pasta on O'Mara's dinner tray on March 17, but

also included references to various other food-related issues,

including the allegedly contaminated food trays:

> I have filed grievances for how my food was handled in
> the past.  I filed [a] grievances for use of
> contaminated food trays full of water . . . .  You are
> still serving food in food trays that weigh six pounds
> full of contaminated mold, mildew bacteria that leaks
> into trays stacked under them.  WHAT IS YOUR PROBLEM?
> Don't you know how to serve food to inmates without
> endangering there health?

(Id. at 005.)  The form was treated as grieving only the cold

pasta, and was otherwise characterized as "a diatribe of

perceived incidents/issues that may or may not have been raised

in the past."  (Id. at 004.)

As noted, without mentioning O'Mara's allegations concerning contaminated food trays, defendants state that "nothing in Mr. O'Mara's medical chart corroborates adverse health effects from allegedly uncivilized housing conditions." (Defs.' Memo. of Law, at 10–11.) Defendants, however, have produced only a small portion of O'Mara's medical records. The records produced are marked as Exhibit F to their motion for summary judgment. Those records are described in Dionne's affidavit as O'Mara's medical records for the period during which he allegedly had been subjected to poisonous gasses and noxious fumes. (Dionne Aff. ¶ 24.) And, indeed, the eight pages comprising Exhibit F begin with "Medical File 002" and end with "Medical File 0052." In other words, more than forty pages of O'Mara's medical records remain unproduced. Because the complete medical record for the relevant period was not offered in support of the motion, the court cannot conclude that the undisputed factual record demonstrates that O'Mara did not suffer from, or complain about, physical symptoms related to moldy trays. Moreover, the court cannot conclude, as a matter of law, that O'Mara's Fourteenth Amendment rights would not have been violated if he had suffered digestive problems, stomach pain, diarrhea, and headaches as a result of eating meals from contaminated food trays for five months, assuming deliberate indifference to such a condition. Accordingly, defendants are not entitled to summary judgment on

15

Claim One.  All that remains of that claim, however, is O'Mara's assertion that he suffered physical pain and/or illness as a result of being served meals on contaminated food trays.  The other grounds underlying Claim One were not properly exhausted.

B.  Claim Two: Placement in Administrative Segregation

In support of their first motion for summary judgment, defendants argued that O'Mara failed to exhaust Claim Two.  (See Defs.' Memo. of Law (document no. 44-2), at 6.)  If they are making the same argument again — their current memorandum of law is not clear on that point — the argument is refuted by their acknowledgment, supported by Dionne's affidavit, that "O'Mara appealed his initial placement on 'ad-seg' " (Defs.' Memo. of Law, at 6 n.7).  Accordingly, defendants are not entitled to dismissal of Claim Two on grounds of exhaustion.

Claim Two is a "Fourteenth Amendment due process claim[ ] arising from O'Mara's confinement in administrative segregation." (Report & Recommendation, at 35.)  The Magistrate Judge further described that claim:

> The hearing and processes employed by defendants
> allegedly failed to provide O'Mara with due process
> prior to being classified to administrative
> segregation.  Afterwards, O'Mara allegedly was denied
> any right to appeal.  He further claims that defendants
> placed him in administrative segregation in reprisal

16

for his filing of a civil action against them and,
therefore, that their actions were not impartial.

(Id. at 29.)  Defendants argue that they are entitled to summary
judgment because the undisputed factual record demonstrates that
the decision to place O'Mara in administrative segregation was
fully justified and that O'Mara received all the process to which
he was due.


Pre-trial detainees such as O'Mara "have a liberty interest
in avoiding punishment – an interest that derives from the
Constitution itself."  Surprenant v. Rivas, 424 F.3d 5, 17 (1st
Cir. 2005) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995);
Bell v. Wolfish, 441 U.S. 520, 535 (1979)).  The process to which
O'Mara was due included, among other things: (1) written notice
of the charges against him, no less than twenty-four hours before
his hearing, Wolff v. McDonnell, 418 U.S. 539, 564 (1974); (2)
the right to call witnesses and present documentary evidence, id.
at 566; and (3) an impartial decisionmaker, id. at 570–71.


While the three elements of due process identified above
were expressly described on page 28 of the Magistrate Judge's
report and recommendation, they are not addressed in either
defendants' memorandum of law or Dionne's affidavit.  Both
Dionne's affidavit (see ¶ 9), and the Classification Appeal Form

17

produced by defendants (see Defs.' Mot. Summ. J., Ex. A, at 003),
are undisputed evidence that O'Mara did appeal the classification
committee's decision, which eliminates denial of appeal rights as
a viable ground for Claim Two.  But, defendants have produced no
evidence that O'Mara received written notice of the February 19,
2008, classification hearing twenty-four hours in advance,[6] no
evidence that he was given the opportunity to call witnesses or
introduce documentary evidence at the February 19 hearing,[7] and
no evidence or argument responding to O'Mara's allegation that he
was reclassified in retaliation for having filed a civil action
against defendants.  Accordingly, defendants are not entitled to
summary judgment on O'Mara's claim that he was placed in
administrative segregation without due process.

---

[6] O'Mara's disciplinary record includes no fewer than
fourteen notices of disciplinary hearings (see Defs.' Mot. Summ.
J., Ex. C, at 0015, 0024, 0045, 0053, 0061, 0072, 0080, 0088,
0096, 00104, 00113, 00125, 00155, 00164), and at least two
executed waivers of notice (see id. at 62, 81), while his
classification record includes neither a notification or a waiver
of notification pertaining to the February 19 classification
hearing.

[7] If anything, the record seems to suggest, or at least
hint, that O'Mara was not given the opportunity to call witnesses
at the February 19 hearing.  The Record of Decision for the
subsequent hearing, on March 19, bears the notation: "Witnesses:
None called by inmate O'Mara" (Defs.'s Mot. Summ. J., Ex. A, at
001), while the February 19 Record of Decision simply says:
"Witnesses: None" (id. at 004).

C.  Claim Three: Out-of-Cell and Recreation Time

        In the order on defendants' previous motion for summary
judgment, the court rejected defendants' argument that O'Mara had
not met the exhaustion requirement with respect to his claim that
he received inadequate out-of-cell and recreation time.  Among
other things, the court pointed out the deficiencies of the
Dionne affidavit, including its failure to attach the Inmate
Grievance Forms it referred to.  That deficiency has been
corrected in the renewed motion for summary judgment, and
defendants are entitled to summary judgment on grounds of
O'Mara's failure to exhaust his administrative remedies.


        In reliance on the magistrate judge's report and
recommendation, the court's previous order described Claim Three
in the following way:

> O'Mara clarifies that from November 11, 2007 to June
> 23, 2008, he was denied any opportunity to exercise out
> of his cell.  He further clarifies that he was "locked
> in a cell 22 hours a day" and was subjected to double-
> celling for a period of seven months.  In addition, he
> alleges that the denial of adequate out-of-cell and
> recreation time has adversely affected his mental well
> being and has caused him to suffer psychological or
> physical problems, including headaches, muscle
> soreness, skin infections, dizziness, weight loss and
> loss of vision and hair.  He adds that the deprivations
> have exacerbated his pre-existing and diagnosed bipolar
> disorder and suicidal tendencies.  Lastly, he broadly
> alleges that he has been denied medication.
>
>         O'Mara's complaints of being denied adequate out-
> of-cell time and recreation time for a significant

> period of time, combined with his allegations of
> resulting psychological and physical problems, allege
> deprivations sufficiently extreme to establish a
> cognizable constitutional claim.

(Order (document no. 53), at 12.)  In the October 28, 2007,

Inmate Grievance Form in which he complained about inadequate

out-of-cell time, O'Mara wrote:

> I am grieving the lack of out of cell time provided to
> myself as a PC [protective custody] inmate on Unit 2A.
> The two 1 hour durations are never 2 1hr periods.  They
> are divided up into bits and pieces.  I do not have
> enough time to contact my attorney during business
> hours.  2 hours of out of cell time for PC inmates is
> less than [the amount of] time provided convicted
> inmates and I am pretrial with the same amount of time
> as maximum security.

(Defs.' Mot. Summ. J., Ex. I, at 0023.)[8]  That grievance

addressed out-of-cell time as it related to O'Mara's ability to

contact his attorney.  Nowhere, however, does it even hint that

O'Mara was complaining about a lack of exercise resulting from

his lack of out-of-cell time, which is the gravamen of Claim

Three.  Moreover, none of O'Mara's other Inmate Grievance Forms

makes any mention of out-of-cell time or exercise, either

---

[8] O'Mara received the following response: "Sergeant Riley
addressed these issues with you.  You can contact your attorney
via the U.S. Mail also.  The unit officers switch OOCT so that
you can have contact at different times with your attorney.  You
also have the ability to move off that unit.  You should address
this with the classification department.  No further action
required."  (Defs.' Mot. Summ. J., Ex. I, at 0023.)

individually or in combination.[9]  Because O'Mara never put jail officials on notice of the issue he raises in Claim Three, <u>i.e.</u>, a lack of physical exercise due to a lack of out-of-cell time, the court concludes that O'Mara has not exhausted his administrative remedies for that claim, which entitles defendants to summary judgment on Claim Three.

## D.  Claim Four: Monell Liability

With Claims One and Two still viable, defendants are not entitled to summary judgment on O'Mara's <u>Monell</u> claim.

## Conclusion

For the reasons given, defendants' renewed motion for summary judgment (document no. 54) is granted in part and denied in part.  The case now consists of Claim One, reduced to a single ground, <u>i.e.</u>, the jail's use of allegedly contaminated food trays, and Claim Two.

---

[9] Specifically, O'Mara grieved: (1) use of the "old tan food trays" (Defs.'s Mot. Summ. J., Ex. I, at 0033); (2) having to eat with a spork (<u>id.</u> at 0031); (3) excessive use of sack lunches (<u>id.</u> at 0029); (4) unequal portions on food trays and an inadequate serving of oatmeal (<u>id.</u> at 0026); (5) his treatment at medical call (<u>id.</u> at 0015); (6) having meals passed to him under the door of his cell (<u>id.</u> at 009-10); (7) being fed all his meals in his cell (<u>id.</u> at 007); and (8) being served cold pasta (<u>id.</u> at 004-05).  In addition, O'Mara filed one Inmate Request Form about out-of-cell time that did not result in a subsequent Inmate Grievance Form.  (Defs.' Mot. Summ. J., Ex. H, at 0030.)

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

October 5, 2009

cc:  Timothy M. O'Mara, <u>pro se</u>
     John A. Curran, Esq.
     Elizabeth L. Hurley, Esq.